# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

RONALD D. FLEMING
and
ROBBYE J. FLEMING,

                  **Plaintiffs,**

v.                                              **Case No. 3:07cv279/MCR/MD**

**TAMA BARBER, et al.,**[1]

                  **Defendants.**

_____/

# O R D E R

       Ronald D. Fleming ("Ronald Fleming") and his wife, Robbye J. Fleming ("Robbye Fleming") (together, "the Flemings" or "plaintiffs"), sue numerous local, state, and federal

---

[1] Plaintiffs name twenty-two defendants in this case: Escambia County Deputy Sheriffs Tama Barber ("Barber"); Glenn Gowitzke ("Gowitzke"); Robert Weller ("Weller"); Jerry Goolsby ("Goolsby"); Stan Reed ("Reed"); Shane Lewis ("Lewis"); and Cheryl Melaven ("Melaven"). Also named as defendants are Santa Rosa County Deputy Sheriffs Joe McCurdy ("McCurdy"), Jeffrey Shuler ("Shuler"), and Earl Griffin ("Griffin"), City of Pensacola Police Officer Chris Wilkinson ("Wilkinson"), and Okaloosa County Deputy Sheriff Monty Easterday ("Easterday"). Each of these defendants is sued in his individual capacity.

    The other defendants, as named by plaintiffs, are United States Marshal Steve Weathersby ("Weathersby"); United States Navy Crime Investigator Diane Cunningham ("Cunningham"), Gulf Coast Kids House ("GCKH"), a private non-profit children's advocacy and abuse prevention organization located in Pensacola, Florida; Families Count, a private non-profit children and families' advocacy organization located in Pensacola, Florida; Sandra Ricketts ("Ricketts"), employee of Families Count and a case co-ordinator for GCKH; and Florida Department of Children and Families ("FDCF") investigator Amy Mayne ("Mayne"). Bill Eddins ("Eddins"), Florida State Attorney for the First Judicial Circuit, is also named as a defendant, as are Florida Assistant State Attorneys Anne Patterson ("Patterson") and David Rimmer ("Rimmer"), and Escambia County Court Judge Pat Kinsey ("Judge Kinsey"). Each of these individual defendants is sued in his individual capacity, other than Cunningham, Patterson, and Rimmer, as to whom neither individual nor official capacity suit is identified in the style of the case (although the complaint asserts claims against the latter two only for injunctive relief), and Eddins, who is sued in his official capacity only. Judge Kinsey is named in her individual capacity but this appears to be in error, as the only relief sought against her is injunctive in nature.

Case No. 3:07cv279/MCR

officials and others pursuant to 42 U.S.C. § 1983, Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) ("Bivens"), and state law.   Plaintiffs assert violations of the Fourth and Fourteenth Amendments arising from the 2005 search and seizure of plaintiffs' property and the related arrest and prosecution of Ronald Fleming for sexual battery of a minor under the age of twelve years.   Presently before the court are the motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) filed by Judge Kinsey and Mayne; Families Count and Ricketts; Eddins, Patterson, and Rimmer; GCKH; and Cunningham and Weathersby, to which plaintiffs have responded in opposition.[2]   As set forth below, the court grants all of the motions except those filed by Ricketts and GCKH, which it denies.

**Background**

The sequence of events in this case is somewhat difficult to ascertain from the vague and broadly stated allegations of plaintiffs' amended complaint.   Nevertheless, it appears that plaintiffs allege the following facts.[3]   In the spring of 2005, Escambia County law enforcement officers – apparently Barber, Weller, and perhaps Gowitzke – commenced an investigation into allegations that Ronald Fleming had sexually abused an eight or nine year old girl who, along with her mother and a younger sibling, had previously lived with the Flemings.   GCKH case coordinator and Families Count employee Ricketts conducted an interview with the child at GCKH in April 2005.   During the interview the girl

---

[2]   The federal defendants, Cunningham and Weathersby, move in the alternative for summary judgment.   The court has not considered any evidence outside the pleadings and thus has not converted defendants' motion to dismiss to one for summary judgment.

[3]   Strictly for the purpose of laying out the sequence of events as coherently as possible, the court recites information plaintiffs provide in their responses to the motions to dismiss.   The court also references information contained in exhibits attached to the amended complaint.   See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368 (11th Cir. 1997) (noting that in considering a motion to dismiss, a court ordinarily may review "the face of the complaint and attachments thereto.") (citing 5 Charles A. Wright & Arthur Miller, Federal Practice and Procedure § 1356 at 590-92 (1969)); Fed.R.Civ.P. 10(c) (providing that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").   Because plaintiffs attached them to the amended complaint the following exhibits are incorporated into the pleading itself: the affidavit in support of search warrant, the search warrant, an information and two amended informations charging Ronald Fleming with sexual battery and other offenses, and the order of Circuit Judge Michael Allen granting Ronald Fleming's motion to suppress evidence.

reported that she had been subjected to several acts of sexual battery by Ronald Fleming; the child also stated that Ronald Fleming had shown her pictures on the internet of nude teenagers.   According to plaintiffs, Barber observed the child's interview, and FDCF investigator Mayne either participated in or supervised it.

Based on the information provided by the child the investigators decided to seek a search warrant for the Fleming home.   Barber prepared and filed a search warrant and an affidavit in support of the warrant, but she failed to sign the affidavit.   The documents were submitted to Judge Kinsey, who attested by her signature dated June 28, 2005, that the affidavit had been "sworn to and subscribed" before her.   Relying on the assertions made in the affidavit, Judge Kinsey issued a warrant that authorized the search and seizure of plaintiffs' residence and their personal effects.   The warrant was executed on June 29, 2005, apparently by Barber, Gowitzke, Reed, Goolsby, Lewis, Melaven, Wilkinson, McCurdy, Shuler, Griffin, Easterday, Weathersby, and Cunningham.[4]   Also, Ronald Fleming was arrested and taken into custody at that time.   Later that day Gowitzke stated to WEAR Channel 3 News that Ronald Fleming was a twice-convicted child molester and convicted murderer and that he had also been arrested for being the leader of a child pornography ring.   These statements were published on the television station's news broadcast.

Assistant State Attorneys Patterson and Rimmer work under State Attorney Eddins. In July 2005 Patterson filed an information and an amended information charging Ronald Fleming with sexual battery of a child under the age of twelve years and other offenses. Both informations were signed by Patterson under oath and contained a standard clause providing, inter alia, that the assistant state attorney had received sworn testimony for the charged offense(s) from a material witness or witnesses and that the prosecution was being instituted in good faith.   In December 2005, Ronald Fleming moved to suppress all

---

[4]  In their amended complaint plaintiffs do not name Weller when identifying the defendants who allegedly illegally seized and searched their property.  Responding to the motions to dismiss, however, plaintiffs state that Weller did participate in the execution of the search warrant.

items seized pursuant to the search warrant, asserting the warrant was invalid because the affidavit in support had not been signed by the affiant as required under Florida law, the affidavit was unacceptably general, and the affidavit established no nexus between the information sought and the residence to be searched.  The state court granted the motion on February 9, 2006, explaining only that the lack of the affiant's signature was fatal to the validity of the warrant.  The court suppressed any evidence seized in the June 29th search of plaintiffs' residence.  In March 2006 Assistant State Attorney Rimmer filed a second amended information that again charged Ronald Fleming with sexual battery of a child under the age of twelve years and other offenses; this information also contained the standard clause providing that the assistant state attorney had received testimony for the offense and that the prosecution had been instituted in good faith.  The case proceeded to trial, at which a jury found Ronald Fleming not guilty of the charged offenses.

Plaintiffs initiated this action in June 2007.  In Count I of their amended complaint plaintiffs adopt the prior twenty-eight introductory paragraphs by reference, then state that the fourteen defendant law enforcement officers as well as Ricketts and Mayne, are liable for "injuries suffered due to wrongful conduct set forth above under [§ 1983].[5]  In Count II, again incorporating by reference the introductory paragraphs of the amended complaint, plaintiffs assert a § 1983 claim in which they seek to enjoin the manner in which Eddins, Patterson, Rimmer, and Judge Kinsey conduct their official duties.  Count III is a state law claim in which plaintiffs allege that Ricketts recklessly or, in the alternative, negligently, interviewed the child, thereby soliciting unreliable and false information that was in part responsible for the unreasonable search and seizure of plaintiffs' property and Ronald Fleming's wrongful arrest and prosecution.  In addition to the equitable relief requested in Count II, plaintiffs seek actual and punitive damages totaling twenty-two million dollars plus

---

[5]  Doc. 4 at 15.  Accordingly, in Count I plaintiffs do not clearly link specific acts or claims to specific defendants; in other words, while plaintiffs indicate generally in the introduction of their amended complaint that this is an action under § 1983 alleging unlawful search and seizure of their property and the wrongful arrest and prosecution of Ronald Fleming in violation of the Fourth and Fourteenth Amendments, see id. at 3, Count I fails to identify with any specificity the claims (or the legal theories supporting them) against particular defendants.

attorney's fees.

Eleven of the state law enforcement officer defendants filed individual answers to the amended complaint.[6]  No other answers have been filed but GCKH, Families Count and Ricketts, and Eddins, Patterson, and Rimmer alone or together filed motions to dismiss. Judge Kinsey and Mayne likewise filed a joint motion to dismiss, as did Cunningham and Weathersby, with the three latter defendants all asserting their entitlement to qualified immunity.  By order dated October 16, 2007, the court stayed further proceedings in this case until it had ruled on the motions to dismiss; the court advised, however, that limited discovery into the issue of the defendants' entitlement to qualified immunity would be allowed on proper motion and cause showing.  Plaintiffs later moved for discovery on the issue of qualified immunity but the court denied plaintiffs' motion, concluding that the discovery requested was too broad and therefore inappropriate. Plaintiffs have filed responses to the five pending motions to dismiss, which therefore are now ripe for review.

**Rule 12(b)(6) and Rule 8 Standards**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept the material allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. See Sheuer v. Rhodes, 416 U.S. 232, 236 (1974); Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999).  To satisfy the pleading requirements of Fed.R.Civ.P. 8, a complaint must simply give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. See Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged.  See Swierkiewicz, 534 U.S. at 511(quoting Scheuer,

---

[6] Of the twelve state law enforcement defendants only Lewis has not filed an answer or appeared. Indeed, the record does not reflect whether Lewis has been served with process.  Plaintiffs therefore shall be required to file proof of service as to Lewis or show cause why the action against him should not be dismissed for failure to effect service.

416 U.S. at 236); United States v. Baxter Int'l, Inc., 345 F.3d 866, 881 (11th Cir. 2003). Until the Supreme Court decision in Bell Atlantic Corp. v. Twombly, 550____U.S. ____, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), courts routinely followed the rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that plaintiff could prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.  Rejecting a literal reading of the "no set of facts" rule, the Court held in Twombly that although a complaint need not plead "detailed factual allegations," in order to survive a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . "; in other words, the complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S.Ct. at 1964-65.  The Court further instructed that the "no set of facts" language was "best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969.

The Supreme Court has stated that a heightened pleading standard – which requires the facts of a claim to be alleged with some specificity – contravenes the notice pleading requirements set forth in Fed.R.Civ.P. 8. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d. 517 (1993).   Nonetheless, with respect to claims brought pursuant to § 1983, this circuit has recognized that a heightened pleading requirement in fact is applicable.  GJR Inv., Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998).  In particular, this circuit has consistently held that the decision in Leatherman does not apply to defendants who may be entitled to qualified immunity. See Epps v. Watson, 492 F.3d 1240, 1243 n.2 (11th Cir. 2007); Passmore Swann v. S. Health Partners, Inc., 388 F.3d 834, 837 (11th Cir. 2004). In such cases, "more than mere conclusory notice pleading is required. . . . [A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984); see also Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003).

## Discussion

### Count I: Bivens and § 1983 Claims for Damages
### (Defendants Weathersby, Cunningham, Mayne, and Ricketts)

To state a claim for relief a § 1983 plaintiff must show that he was deprived of a right secured by the Constitution or laws of the United States, and that the person who committed the alleged deprivation acted under color of state law. See Focus on the Family v. Pinellas Suncoast Transit Authority, 344 F.3d 1263, 1277 (11th Cir. 2003); Patrick v. Floyd Medical Center, 201 F.3d 1313, 1315 (11th Cir. 2000). Thus § 1983 does not apply to federal defendants acting under color of federal law. District of Columbia v. Carter, 409 U.S. 418, 424-25, 93 S.Ct. 602, 606, 34 L.Ed.2d 613 (1973). Bivens actions, however, provide a remedy for constitutional violations committed by federal actors. See Abella v. Rubino, 63 F.3d 1063 (11th Cir. 1995) (quoting Dean v. Gladney, 621 F.2d 1331, 1336 (5th Cir. 1980)). Bivens actions are brought directly under the Constitution where no alternative methods of obtaining redress exist. Hardison v. Cohen, 375 F.3d 1262, 1264 (11th Cir. 2004). As a general matter, federal courts incorporate § 1983 law into Bivens actions, and thus the analysis for both types of actions is essentially the same. See Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 433 n. 5, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993); Smith ex rel. Smith v. Siegelman, 322 F.3d 1290, 1297 n. 15 (11th Cir. 2003).

#### Weathersby and Cunningham

Plaintiffs allege that all of the defendants named in Count I knew or should have known that the warrant used to search and seize plaintiffs' property was invalid because the affidavit in support lacked Barber's signature, contained insufficient information to establish probable cause, contained both information from an unreliable source (an eight or nine year old child), and was obtained in an unreliable manner. In their motion to dismiss, federal defendants Cunningham and Weathersby assert, inter alia, their

entitlement to qualified immunity.[7]  Cunningham and Weathersby primarily argue that plaintiffs have failed to allege facts that establish a constitutional violation because the defendants had no obligation to look beyond the face of the warrant signed by Judge Kinsey to determine whether the warrant was valid.  Plaintiffs respond that Cunningham and Weathersby's reliance on a facially invalid search warrant was not objectively reasonable.[8]

The question of whether a government official is entitled to qualified immunity should be resolved at the earliest possible stage of litigation.  Anderson v. Creighton, 483 U.S. 635, 346 n.6, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).  A defense of qualified immunity therefore is properly raised in a motion to dismiss, and the motion may be granted even prior to discovery if the "complaint fails to allege the violation of a clearly established constitutional right."  St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002); Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411(1985).  Under such circumstances, a defendant is entitled to dismissal at an early stage of litigation because he is not merely pleading a defense to liability but immunity from suit.  Mitchell, 472 U.S. at 526.

To be eligible for qualified immunity, the official must first establish that he was performing a "discretionary function" at the time the alleged violation of federal law occurred.  See Crosby v. Monroe County, 394 F.3d 1328, 1331 (11th Cir. 2004).  Once the official has established that he was engaged in a discretionary function, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity. See Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).  The Supreme Court has set forth a two-part test for the qualified immunity analysis. "The threshold inquiry a

[7] None of the local law enforcement officers named in Count I has moved for dismissal of Count I, i.e., Barber, Gowitzke, Weller, Goolsby, Reed, Lewis, Melaven, McCurdy, Shuler, Griffin, Wilkinson, or Easterday.

[8] As further support for their contention that defendants' reliance on the search warrant was unreasonable, plaintiffs point to the fact that the warrant was issued by Judge Kinsey, who plaintiffs claim has a known bias in favor of law enforcement and against criminal defendants.  This assertion merits no discussion.

court must undertake . . . is whether [the] plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002) (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.  "If a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" Vinyard, 311 F.3d at 1346 (quoting Saucier, 533 U.S. at 201).  Before qualified immunity is surrendered by an officer, he is entitled to fair and clear warning that the challenged conduct violates federally protected rights. See Vinyard, 311 F.3d at 1350-51.

The allegations of plaintiffs' amended complaint reflect, and plaintiffs do not argue otherwise, that in participating in the execution of the search warrant Cunningham and Weathersby were performing a discretionary function.  The court must therefore next consider whether plaintiffs have adequately alleged that Cunningham and Weathersby violated plaintiffs' clearly established constitutional right under the Fourth Amendment not to be subjected to an unreasonable search and seizure of their property.[9]

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  In this case, there is no dispute that the search warrant adequately described the place to be searched and the things to be seized with particularity. See Groh v. Ramirez, 540 U.S. 551, 557, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004).  It is also undisputed that the affidavit in support of

---

[9] Plaintiffs do not state whether Ronald Fleming's arrest was warrantless or whether an arrest warrant was obtained.  They only note, in a footnote in their response to Cunningham and Weathersby's motion, that "[t]here appears to have been no valid basis for Ronald Fleming[']s arrest."  (Doc. 83 at 7 n. 5).  In any event, at most the vague allegations of plaintiffs' amended complaint (and the slightly more specific information contained in their response) may be fairly read as asserting that Cunningham and Weathersby were involved in the execution of the search warrant only.  As to these defendants, therefore, to the extent plaintiffs assert a claim of false arrest, the court does not herein consider it.

the application for the warrant was not signed by the affiant, as required by state law.

Plaintiffs submit that in suppressing the evidence the state court judge must have believed that the actions of the officers were objectively unreasonable and that the good faith exception to the exclusionary rule therefore did not apply.  Because no reason other than the lack of the affiant's signature on the affidavit was cited by the state court judge as the reason for granting the motion to suppress, however, plaintiffs' suggestions is nothing more than speculation.  As plaintiffs must acknowledge, the search warrant upon which Weathersby and Cunningham relied was signed by an authorized judicial officer, Judge Kinsey.  Moreover, plaintiffs do not allege there were any other technical deficiencies with the affidavit other than the lack of the affiant's signature and they can point to none that are apparent from the face of the warrant.  Also, plaintiffs do not allege that either Weathersby or Cunningham had a leadership role in the investigation into the allegations of child abuse against Ronald Fleming or in seeking the warrant for the Flemings' property. At most, plaintiffs' vague and conclusory allegations suggest that Weathersby and Cunningham took part in executing the warrant.  Under the doctrine of qualified immunity, "[o]fficials are liable for committing constitutional torts . . . only if they knew, or were unreasonable in not knowing, that their behavior violated the Constitution."  Harris v. District of Columbia, 932 F.2d 10, 13 (D.C.Cir. 1991).  Thus a law enforcement officer who is merely responsible for the execution of a facially valid search warrant ordinarily is immune from suit; this is true even if a genuine question exists as to whether the officer responsible for actually obtaining the warrant reasonably believed there was probable cause for doing so.  See Salmon v. Schwarz, 948 F.2d 1131, 1140-41 (10th Cir. 1991) (holding an officer's "execution of [a] facially valid arrest warrant . . . [was] protected by the defense of qualified immunity") (citing Anderson, 483 U.S. at 641) ("[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable.")).  In signing and issuing the search warrant Judge Kinsey officially

declared that Barber, under oath, had presented information to her sufficient to establish probable cause to search the Fleming residence.  In participating in the execution of the search warrant on the Flemings' home, Weathersby and Cunningham were entitled to rely on the facial validity of that warrant and the fact that they did so was reasonable; they were not required to verify the procedural or substantive accuracy of the affidavit in support of the warrant.  Plaintiffs' allegation that Weathersby and Cunningham took part in the execution of a facially valid search warrant therefore fails to state the violation of a well-established constitutional right.  Accordingly, these defendants are plainly entitled to qualified immunity.

For the foregoing reasons, the motion to dismiss filed by Cunningham and Weathersby is granted, and the claims asserted against these defendants in Count I are dismissed with prejudice.

Mayne

Plaintiffs also sue Mayne, an employee of the FDCF, in Count I.  They allege that Mayne either participated in or supervised Rickett's interview of the child, thereby soliciting false information that Mayne knew or should have known would be used to establish probable cause for an unreasonable search and seizure.  Mayne moves for dismissal, asserting that plaintiffs' § 1983 claim is barred by absolute immunity because she acted in her quasi-prosecutorial function as a child protective services investigator in connection with the interview at issue in this case.  Alternatively, Mayne contends that qualified immunity protects her from suit.

As an initial matter, there is no dispute that Mayne is a state actor.  She is not, however, entitled to absolute immunity.  It is true that state actors may be granted absolute immunity for those functions that are critical to the judicial process itself, such initiating a prosecution. Imbler v. Pachtman, 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).  This protection, which has traditionally been available to prosecutors, has also been extended to social workers and child protective services investigators who have acted in a quasi-judicial or prosecutorial capacity.  See, e.g., Salyer v. Patrick, 874 F.2d 374 (6th

Cir. 1989); Vosburg v. Department of Social Servs., 884 F.2d 133 (4th Cir. 1989); Meyers v. Contra Costa County Dept. of Social Servs., 812 F.2d 1154, 1157 (9th Cir. 1987). Prosecutors and others investigating criminal matters have no absolute immunity for their investigatory conduct, however. Kalina v. Fletcher, 522 U.S. 118, 126, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). Accordingly, social workers or others conducting investigations into child abuse allegations such as Mayne similarly have no such immunity.

Mayne's claim of entitlement to qualified immunity, however, has merit. Mayne unquestionably was performing a discretionary function at the time the alleged constitutional violation occurred.  As noted, plaintiffs have not clearly identified the claims or legal theories under which they wish to proceed against each individual defendant. Nevertheless, regardless of whether they attempt to cast their claim against Mayne as involving injuries flowing from an unreasonable search and seizure in violation of the Fourth Amendment or as arising directly under the due process clause of the Fourteenth Amendment, the court concludes they have not satisfactorily alleged that Mayne violated a constitutional right when she supervised or took part in the interview at issue.

In June 2005 it simply was not clearly established in this circuit that in a sexual abuse investigation soliciting a nine year old child's uncorroborated but otherwise facially trustworthy statement that was later cited in an affidavit in support of a search warrant violated the Constitution.  See Rankin v. Evans, 133 F.3d 1425, 1440 (11th Cir. 1998) (finding that in addition to independent evidence the investigator was entitled "to rely to a meaningful degree on [a three and one-half year old child's] statements in determining the existence of probable cause, and that those statements supported probable cause."); Lowe v. Aldridge, 958 F.2d 1565, 1571 (11th Cir. 1992) (stating "[t]here is no basis for holding that police officers cannot depend on the uncorroborated evidence of a child victim of sexual abuse for the request for a warrant."); Marx. v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir. 1990) (determining that officers reasonably relied on the statements of a four-year-old to support, in part, their assertion that probable cause for an arrest existed). Similarly, even if Mayne could be held responsible on a due process theory for actions that

others took in reliance on information that she gathered, she is protected by qualified immunity. "There is no constitutional due process right to have child witnesses, in a child sexual abuse investigation, interviewed in a particular manner or pursuant to a certain protocol." Devereaux v. Perez, 218 F.3d 1045, 1053 (9th Cir. 2000); see also Myers v. Morris, 810 F.2d 1437 (8th Cir. 1987). Because plaintiffs have not sufficiently alleged that Mayne violated their constitutional rights – much less their clearly established constitutional rights – Mayne is entitled to qualified immunity.[10]

Based on the reasons stated above, Mayne's motion to dismiss is due to be granted. The claims asserted against her in Count I are therefore dismissed with prejudice.

Ricketts

Plaintiffs assert in their amended complaint that Ricketts is an employee of Families Count and a case co-ordinator for GCKH. According to plaintiffs, Ricketts acted under color of state law by co-operating or working closely with and essentially under the direction of Escambia County law enforcement officers. Plaintiffs further allege that Ricketts obtained information from the child during the interview that was unreliable and false and that she knew or should have known that the information would be used to establish probable cause for the unreasonable search and seizure of plaintiffs' property. In response, Ricketts argues only  that she is not a state actor because she is a private individual who worked for a private, non-profit corporation. Ricketts asserts, therefore, that she is not subject to liability under § 1983. Ricketts offers no response to plaintiffs' allegations that her conduct violated their constitutional rights.

The Eleventh Circuit has noted that "only in rare circumstances can a private party

---

[10] Moreover, the court concludes that any allegation that Mayne violated the Constitution by facilitating an interview that led to the issuance of a search warrant fails to state a claim for relief against her. Mayne had no part in the search or seizure of plaintiffs' property and thus in the alleged violation of their Fourth Amendment rights. Also, any alleged connection between Mayne and the complained-of search and seizure is too attenuated to state a § 1983 due process claim for violation of the Fourteenth Amendment. See Troupe v. Sarasota County, Fla., 419 F.3d 1160, 1165 (11th Cir. 2005) (noting that a § 1983 claim requires proof "of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation."); Jackson v.  Sauls, 206 F.3d 1156, 1168 (11th Cir.  2000) (noting that a § 1983 defendant is responsible only for the natural and foreseeable consequences of his actions).

be viewed as a 'state actor' for Section 1983 purposes." <u>Harvey v. Harvey</u>, 949 F.2d 1127, 1130 (11th Cir. 1992).  The United States Supreme Court has made it clear that "state action requires both an alleged constitutional deprivation `caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' and that `the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" <u>American Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d. 130 (1999) (citation omitted).  There are three primary tests for evaluating whether a private individual may be considered a state actor: "(1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test." <u>Nat'l Broad. Co. v. Communications Workers of America</u>, 860 F.2d 1022,1026 (11th Cir. 1988).  The public function test applies to activities that are "traditionally the exclusive prerogative of the state." <u>Id.</u> (citations omitted).  Interviewing potential child abuse victims has never been an exclusive function of the government and thus the public function test is inapplicable to the instant case.  <u>See Lowe</u> , 958 F.2d at 1572. The state compulsion test is also not applicable here. The state compels a private individual "when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed that of the state." <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1004, 104 S.Ct. 2777, 73 L.Ed.2d. 534 (1982). Plaintiffs have made no allegations that Ricketts was coerced or encouraged the action that purportedly violated the Constitution, but rather that she willingly worked with and under the direction of Escambia County law enforcement officers.

Of the three tests the nexus/joint action test is the most amenable to analysis of plaintiffs' allegations.  Under this test, the state must have "so far insinuated itself into a position of interdependence with the [private parties]" that the actions of the two would be considered a joint enterprise and their relationship would be considered symbiotic.  <u>Nat'l Broad. Co.</u>, 860 F.2d at 1027.  In <u>Lowe</u>, the Eleventh Circuit concluded that a therapist who reported child abuse to state officials, observed a police detective's interview of the children regarding the allegations of abuse, and testified at a probable cause hearing was

not a state actor. Lowe, 958 F.2d at 1572. The court noted that the therapist had no formal arrangement with the prosecutor's office or any other governmental office to work with alleged victims of child abuse and had played only an insignificant role in the law enforcement officer's interview.

In this case, Ricketts acknowledges that her employer, Families Count, provides interview services at the request of FDCF in connection with child abuse allegations and she does not dispute that she was instrumental in conducting the child's interview in this case.[11] Thus the facts of the instant case are inapposite to those in Lowe. Based on plaintiffs' allegations, which the court must take as true for purposes of the instant motion, the court concludes that plaintiffs have stated "enough facts" to survive a Rule 12(b)(6) motion on the issue of whether Ricketts is a state actor, the only argument Ricketts raises in connection with plaintiffs' § 1983 claim against her.[12] Twombly, 127 S.Ct. at 1964-65. Nat'l Broad. Co., 860 F.2d at 1027. Accordingly, Rickett's motion to dismiss Count I is denied.

## Count II: § 1983 Claim for Injunctive Relief
### (Defendants Judge Kinsey, Eddins, Patterson, and Rimmer)

Judge Kinsey

In Count II of the amended complaint plaintiffs seek injunctive relief against Judge Kinsey.[13] In her motion for dismissal, which plaintiffs oppose, Mayne contends that

---

[11] The court also notes that on the amended information dated July 29, 2005, Patterson signed above a signature block that identified her position as assistant state attorney. Below her name is listed Gulf Coast Kid's House, as well as its address on N. 12th Avenue in Pensacola, Florida.

[12] As discussed, the doctrine of qualified immunity protects Mayne from liability in this case. If it is determined that Ricketts is a state actor for purposes of plaintiffs' § 1983 claim, however, as a privately employed social worker or child abuse investigator the doctrine likely will not apply to her. See Hinson v. Edmond, 192 F.3d 1342 (11th Cir. 1999) (declining to extend qualified immunity to privately employed prison physician) (citing Richardson v. McKnight, 521 U.S. 399, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997) (holding that privately employed prison guards were not entitled to qualified immunity)). While the additional reasons for dismissing the complaint against Mayne cited in footnote 10 might also apply to Ricketts, as noted, in her instant motion Ricketts does not argue any basis for dismissal other than that she is not a state actor.

[13] Plaintiffs seek to enjoin Judge Kinsey from attesting on affidavits in support of search warrants that the affiant has sworn to and signed the affidavit before her when in fact the affiant has not; from accepting affidavits in support of search warrants without "critically evaluating" their contents for indicia of reliability, etc.;

plaintiffs' allegations fail to establish a violation of federal law and thus preclude relief.

In Pulliam v. Allen, 466 U.S.522, 104 S.Ct.1970, 80 L.Ed.2d 565 (1984), the Supreme Court concluded that judicial immunity is not a bar to demands for injunctive relief against state judges. Congress limited Pulliam in 1996, however, when it passed the Federal Court Improvement Act, Pub. L. No. 104-317, § 309(c) 110 Stat. 3847, 3853 (codified as amended at 42 U.S.C. § 1983).  This Act amended § 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Id.  Plaintiffs in this case do not allege in their amended complaint that a declaratory decree was violated.  Moreover, they do not allege that at the time Judge Kinsey signed the warrant declaratory relief was unavailable, although they assert this argument in their response to Judge Kinsey's motion to dismiss.[14] Plaintiffs' failure to allege either prerequisite for injunctive relief in their amended complaint is sufficient to subject the complaint to dismissal.  See Montero v. Travis, 171 F.3d 757, 761 (2d Cir. 1999) (holding injunctive relief against a quasi-judicial official is barred if the plaintiff fails to allege a violation of a declaratory decree or the unavailability of declaratory relief); Fox v. Lee, 99 F.Supp.2d 573, 575-576 (E.D.Pa. 2000) (dismissing claim for injunctive relief where plaintiff's complaint failed to allege that either of the prerequisites to injunctive relief were met); Ackermann v. Doyle, 43 F.Supp.2d 265, 273 (E.D.N.Y. 1999) (dismissing action against judicial officers because plaintiff failed to allege that a declaratory decree was violated or the declaratory relief was unavailable).

Regardless of the pleading deficiency in plaintiffs' amended complaint, the court concludes that even if the exception to the Federal Court Improvement Act pertaining to the unavailability of declaratory relief applies in this case such that injunctive relief could

---

and from "exercising bias in favor of law enforcement and against the subject of a law enforcement investigation." Doc. 4 at 17.

[14] According to plaintiffs, "declaratory relief was unavailable because the judge performed this judicial act ex parte apparently twice over in that not only was [Ronald] Fleming or his counsel not present but neither was officer Barber, the affiant." Doc. 41 at 6.

be sought against Judge Kinsey, "simply because injunctive relief is available does not mean it is appropriate." Badillo v. Thorpe, 158 Fed.Appx. 208, 211 (11th Cir. 2005). In order to be entitled to injunctive relief from a constitutional violation, plaintiffs are required to show that their rights were infringed by the defendant, that they have an no adequate remedy at law, and that there is a serious risk of irreparable harm if relief is not granted. Newman v. State of Alabama, 683 F.2d 1312, 1319 (11th Cir. 1982) (citing Rizzo v. Goode, 423 U.S. 362, 377, 96 S.Ct. 598, 607, 46 L.Ed.2d 561 (1976), and Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506, 79 S.Ct. 948, 954, 3 L.Ed.2d 988 (1959)). Equitable relief is not appropriate where an adequate remedy under state law exists. See Pulliam, 466 U.S. at 542 & n. 22. An adequate remedy at law exists when the acts of the judicial officer can be reviewed on appeal or by extraordinary writ. See Mullis v. United States Bankruptcy Court for Dist. of Nevada, 828 F.2d 1385, 1392 (9th Cir. 1987) (citation omitted); Rasheed v. MacNamara, 2008 WL 594763, *2 (N.D.Ga. 2008) (citing Bolin v. Story, 225 F.3d1234, 1242-43 (11th Cir. 2000)). "Although past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury, [p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1284 (11th Cir. 2001) (internal quotations omitted) (alterations in original).

First, plaintiffs' allegations that Judge Kinsey violated Ronald Fleming's constitutional rights are meritless: Barber's affidavit sufficiently established probable cause to issue the search warrant.[15] Furthermore, at most, Judge Kinsey's failure to assure that Barber signed the affidavit was an oversight constituting negligence. Negligent conduct is insufficient to violate the Constitution. Rivas v. Freeman, 940 F.2d 1491, 1496 (11th Cir. 1991). Moreover, even if plaintiffs could allege that their constitutional rights were violated

---

[15] Barber's affidavit outlines the circumstances surrounding the allegations that Ronald Fleming had sexually abused a child under the age of twelve years and had shown her pornographic images on the internet. The affidavit describes in detail this alleged conduct by Ronald Fleming and it also identifies a computer in his home that was stated to contain evidence connected to the latter activities.

in connection with the issuance of the search warrant, they are unable to allege that no adequate remedy at law for the specific violation was available.  Ronald Fleming was entitled to appeal any rulings or actions taken in his state criminal action and in fact did successfully seek such relief.  Second, plaintiffs have failed to assert that a present case or controversy exists and they cannot allege they will suffer any continuing, present adverse effects resulting from Judge Kinsey's performance of her judicial duties.  The criminal case against Ronald Fleming has concluded, and there is no allegation that new criminal charges have or will be brought against him arising from these facts.  See 31 Foster Children v. Bush, 329 F.3d 1255, 1263 (11th Cir. 2003) (holding that plaintiffs' claims for prospective injunctive relief were moot because the plaintiffs "cannot be further harmed by the defendants' alleged illegal practices.").  Moreover, plaintiffs lack standing to assert the constitutional rights of others they maintain could be harmed by Judge Kinsey's future conduct.  See Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (noting that in addition to Article III standing requirements there are non-constitutional limits on standing to sue, including the prudential limitation that, with some exceptions, parties may assert only their own rights and not those of others).  Accordingly, for these reasons plaintiffs are not entitled to seek injunctive relief against Judge Kinsey in this case.

Judge Kinsey's motion to dismiss is therefore granted. Count II of the amended complaint, insofar as it pertains to Judge Kinsey, is dismissed with prejudice.

Eddins, Patterson, and Rimmer

Count II of the complaint also seeks injunctive relief against Eddins, Patterson and Rimmer under § 1983.  Plaintiffs seek an injunction that would prohibit Eddins from permitting his Assistant State Attorneys from averring under oath on charging documents that they have sworn statements from material witnesses when in fact they do not; plaintiffs seek the same relief with respect to Patterson and Rimmer.  Plaintiffs assert that the averments made by Patterson and Rimmer resulted in the deprivation of the constitutional rights of Ronald Fleming and that their conduct has caused  the denial of due process to

prior criminal defendants in Escambia County and will cause the same to future criminal defendants. Defendants move for dismissal of Count II, asserting that this court lacks subject matter jurisdiction because no case or controversy is pending and that plaintiffs lack standing to assert the constitutional rights of others.  Defendants also contend that plaintiffs' claim for injunctive relief is barred by the abstention doctrine enunciated in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).  Finally, defendants submit that plaintiffs' general references to § 1983 and the Fourth and Fourteenth Amendments are insufficient to state a claim upon which relief can be granted.  Plaintiffs respond that the amended complaint adequately alleges a practice and policy of perjury by prosecutors in the State Attorney's Office, that current continuing effects exist which permit injunctive relief, and that the abstention doctrine only applies to pending criminal cases.

The court first notes that prosecutors are not immune from claims for injunctive relief. Bolin, 225 F.3d at 1242.  Nevertheless, the court concludes that plaintiffs have not made a viable allegation of entitlement to equitable relief against the State Attorney and the Assistant State Attorneys.  First, plaintiffs have not adequately alleged the violation of a constitutional right, here presumably the Fourth Amendment.  Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003) (stating that the Eleventh Circuit "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983."); Uboh v. Reno, 141 F.3d 1000, 1002-04 (11th Cir. 1998). To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution.[16] Wood, 323 F.3d at 881.

---

[16] A malicious prosecution claim under Florida law includes the following six elements: (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.

Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004).

Even if plaintiffs could allege some of the elements required to make out a claim of malicious prosecution against Ronald Fleming, they are unable to allege the absence of probable cause for his arrest or prosecution.  As noted, the court is satisfied that the affidavit in support of the search warrant was supported by probable cause and that the charging informations are fully consistent with the affidavit.[17]   Additionally, plaintiffs have failed to clearly allege the defendants' malice, which is also required for a claim of malicious prosecution.

Plaintiffs also cite violations of their Fourteenth Amendment rights, although it is unclear from the face of the amended complaint how these rights were violated.  Plaintiffs make repeated references to due process violations in their amended complaint, yet they do not specify until their response that they are referring to substantive due process. Substantive due process protection has been traditionally applied to matters such as "marriage, family, procreation, and the right to bodily integrity." Albright v. Oliver, 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)(plurality opinion).  Courts rarely expand the application of substantive due process claims. See id. at 271; Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).  Allegations that the Assistant State Attorneys made false statements in the informations and relied on what plaintiffs view as unreliable and false information do not constitute a cognizable substantive due process claim.  Thus plaintiffs have failed to adequately allege that Eddins, Patterson, or Rimmer violated their Fourth or Fourteenth Amendment rights.

Even if plaintiffs had stated the violation of a constitutional right by Eddins, Patterson, or Rimmer, given that Ronald Fleming successfully defended the criminal action against him, plaintiffs cannot allege that no adequate remedy at law existed for the specific violations.  Nor, as previously discussed, can they allege the existence of a present case or controversy because they cannot show they would suffer any continuing, present

---

[17]  Even though the state court suppressed certain evidence seized during the search and thus such evidence could not be used at trial, Rimmer nevertheless was not precluded from relying on information contained in Barber's affidavit in filing the second amended information against Ronald Fleming.

adverse effects resulting from the State Attorney's or the Assistant State Attorney's performance of their prosecutorial duties.  Finally, as noted, plaintiffs lack standing to assert the constitutional rights of others.

Because plaintiffs are not entitled to injunctive relief against Eddins, Patterson, or Rimmer, their motion to dismiss is granted. Count II of the amended complaint, insofar as it pertains to these defendants, is therefore dismissed with prejudice.

### Count III: Florida Law Claims
### (Defendants Ricketts, GCKH, and Families Count)

Ricketts

Count III seeks recovery under Florida common law against Ricketts for the allegedly reckless or, in the alternative, negligent manner in which she interviewed the child.  According to plaintiffs, such conduct led to the search of the Fleming residence and Ronald Fleming's arrest and prosecution.  Ricketts asserts her immunity under Fla.Stat. § 39.203(1)(a) but plaintiffs contend that entitlement to immunity under this section implicates questions of fact that may not be decided on a motion to dismiss.

Section 39.203 is entitled "Immunity from liability in cases of child abuse, abandonment, or neglect."  Subsection (1)(a) § 39.203 provides that "[a]ny person, official, or institution participating in good faith in any act authorized or required by this chapter, or reporting in good faith any instance of child abuse, abandonment, or neglect to the department or any law enforcement agency, shall be immune from any civil or criminal liability which might otherwise result by reason of such action."  Accordingly, pursuant to this section the Florida legislature has granted certain persons or institutions qualified immunity for their "good faith" participation in the sort of investigations into child abuse allegations that are at issue in this case.  See Johnson v. Sackett, 793 So.2d 20, 25 n.3 (Fla. 2nd DCA 2001).

Plaintiffs assert that Ricketts negligently, recklessly, or with deliberate indifference "solicit[ed] unreliable and false information" from the child during the interview that Ricketts knew would be used to seek a search warrant.  Even accepting plaintiffs' allegations

against Ricketts as true, as it must for this Rule 12(b)(6) analysis, the court concludes that plaintiffs have failed to allege facts sufficient to suggest that Ricketts' conduct was negligent, reckless, or deliberately indifferent.[18]   Indeed, nothing in plaintiffs' factual allegations suggests she acted in an absence of good faith in the performance of her duties or hints of an improper motive on her part. See Urquhart v. Helmich, 947 So.2d 539, 542 (Fla. 1st DCA 2006) (noting that where there is an issue of fact as to whether the child abuse reporting procedure was used for an improper purpose, such as revenge by an angry former spouse or spiteful neighbor, a jury question on the issue of § 39.203(1)(a)'s broad grant of good faith immunity might be presented).   The fact that Ricketts may have obtained "unreliable" or "false" information from a young child in the course of an interview regarding sexual abuse allegations, as alleged by plaintiffs, in no way implies that Ricketts did not act in good faith.   The allegations of the amended complaint in the instant matter simply are insufficient to suggest that Ricketts' actions in interviewing the child should preclude her entitlement to good faith immunity.[19]   Id.   Accordingly, Ricketts' motion to dismiss Count III of the amended complaint is granted, with prejudice.

GCKH

In Count III plaintiffs seek recovery against GCKH, as Ricketts' employer, also under a theory of vicarious liability.   Under Florida law, "vicarious liability involves the imposition of liability on one person for the actionable conduct of another, based solely on a relationship between the two persons."   National R.R. Passenger Corp. v. Rountree Transport and Rigging, Inc., 286 F.3d 1233, 1262 (11th Cir. 2002) (quotation omitted). An employer cannot be vicariously liable, however, if the employee is not liable for the act on which the vicarious liability is premised. See Buettner v. Cellular One, Inc., 700 So.2d

---

[18]   The court references negligence here only because plaintiffs have alleged it in Count III.  The court notes, however, that a person may act negligently in investigating or reporting an allegation of child sexual abuse but nonetheless still act in good faith.

[19]   The court notes that good faith immunity is particularly appropriate and in fact is needed in the context of child sexual abuse inquiries such as the one at issue in this case.   Immunity such as that conferred by the Florida legislature in § 39.203(1)(a) should be afforded to assure that those whom society charges with protecting children are themselves protected when they discharge their responsibilities in good faith.

48 (Fla. 1st DCA 1997), citing <u>Bankers Multiple Line Ins. Co. v. Farish</u>, 464 So.2d 530, 532 (Fla. 1985) (noting well-settled doctrine that provides "when a principal's liability rests solely on the doctrine of <u>respondeat</u> <u>superior</u>, a principal cannot be held liable if the agent is exonerated."). Therefore, in light of the court's conclusion that plaintiffs' allegations against Ricketts fail, any liability on the part of GCKH premised on Ricketts' liability likewise fails. Accordingly, GCKH's motion to dismiss is granted, with prejudice.

<u>Families Count</u>

Plaintiffs also seek to hold Families Count, whom they identify as one of Ricketts' employers, vicariously liable for Ricketts' allegedly wrongful conduct. Families Count's motion to dismiss is granted for the same reason that GCKH's motion is granted. Additionally, because it appears to be undisputed that Families Count is not a legal entity and is not properly named as a defendant in this case, its motion to dismiss is also granted on that ground. Dismissal is with prejudice.

**Conclusion**

For the reasons set forth above, the motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) filed by Judge Kinsey and Mayne (doc. 8) is GRANTED, as are the motions filed by Eddins, Patterson, and Rimmer (doc. 23); and Cunningham and Weathersby (doc. 61). The motion filed by Families Count and Ricketts (doc. 14) is granted as to Families Count and denied in part and granted in part as to Ricketts; the motion filed by GCKH (doc. 25) is also granted.

Accordingly, it is ORDERED:

1.       The motion to dismiss filed by Judge Kinsey and Mayne (doc. 8) is GRANTED. Dismissal is with prejudice.

2.       The motion to dismiss filed by Families Count and Ricketts (doc. 14) is DENIED in part and GRANTED in part:

        (a)       Families Count: GRANTED.

        (b)       Ricketts: DENIED as to Count I and GRANTED, with prejudice, as to Count III.

3.      The motion to dismiss filed by Eddins, Patterson, and Rimmer (doc. 23) is GRANTED.   Dismissal is with prejudice.

4.      The motion to dismiss filed by Gulf Coast Kids House (doc. 25) is GRANTED.  Dismissal is  with prejudice.

5.      The motion to dismiss filed by Cunningham and Weathersby (doc. 61) is GRANTED.  Dismissal is with prejudice.

6.      Final judgment shall not be entered in favor of Judge Kinsey, Mayne, Ricketts, Families Count, Eddins, Patterson, Rimmer, Cunningham, and Weathersby at this time but rather shall be entered at the conclusion of the entire case.

7.      Plaintiffs shall have fourteen (14) days in which to file proof of timely service of process upon defendant Shane Lewis or show cause why Lewis should not be dismissed from this action for plaintiffs' failure to effect service.

8.      The stay entered October 16, 2007, is LIFTED.   Upon entry of the instant order on the docket the clerk shall refer this case to chambers for issuance of a revised scheduling order.

**DONE and ORDERED** this 17th day of July, 2008.


_s/ M. Casey Rodgers_
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**