# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION


**RONALD D. FLEMING**
**and**
**ROBBYE J. FLEMING,**

               **Plaintiffs,**

**v.**                                            **Case No. 3:07cv279/MCR/MD**

**TAMA BARBER, et al.,**

               **Defendants.**

_____/

## O R D E R

      In this action Ronald D. Fleming ("Ronald Fleming") and his wife, Robbye J. Fleming (together, "the Flemings" or "plaintiffs"), sue numerous local, state, and federal officials and others pursuant to 42 U.S.C. § 1983, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and state law.[1] Plaintiffs assert violations of the Fourth and Fourteenth Amendments to the U.S.

---

[1] Plaintiffs name twenty-two defendants in their first amended complaint: Escambia County Deputy Sheriffs Tama Barber ("Barber"), Glenn Gowitzke ("Gowitzke"), Robert Weller ("Weller"), Jerry Gulsby ("Gulsby") [misidentified by plaintiffs as Jerry Goolsby], Stan Reed ("Reed"), Shane Lewis ("Lewis"), and Cheryl Melaven ("Melaven"); Santa Rosa County Deputy Sheriffs Joe McCurdy ("McCurdy"), Jeffrey Shuler ("Shuler"), and Earl Griffin ("Griffin"); City of Pensacola Police Officer Chris Wilkinson ("Wilkinson"); Okaloosa County Deputy Sheriff Monty Easterday ("Easterday"); U.S. Marshal Steve Weathersby ("Weathersby"); U.S. Navy Crime Investigator Diane Cunningham ("Cunningham"); Gulf Coast Kids House ("GCKH"), a private non-profit children's advocacy and abuse prevention organization located in Pensacola, Florida; Families Count, a private non-profit children and families' advocacy organization located in Pensacola, Florida; Sandra Ricketts ("Ricketts"), employee of Families Count and a case co-ordinator for GCKH; Florida Department of Children and Families ("FDCF") investigator Amy Mayne ("Mayne"); Florida State Attorney for the First Judicial Circuit Bill Eddins ("Eddins"); Florida Assistant State Attorneys Anne Patterson ("Patterson") and David Rimmer ("Rimmer"); and Escambia County Court Judge Pat Kinsey ("Judge Kinsey").

Constitution stemming from the 2005 search and seizure of plaintiffs' property and the related arrest and the unsuccessful prosecution of Ronald Fleming for sexual battery of a minor under the age of twelve years.   Presently before the court are the motion for judgment on the pleadings filed by Ricketts and two motions for summary judgment, one filed by Wilkinson and the other filed by Barber, Gulsby, Reed, Melaven, McCurdy, Shuler, Griffin, Easterday, Weller, and Gowitzke ("Barber, *et al.*").   Plaintiffs have responded in opposition only to the Barber, *et al.*, motion.   As set forth below, the court grants the defendants' motions.

**Procedural History**

Plaintiffs initiated this action in June 2007 and filed an amended complaint in July 2007.[2]  In four separate motions GCKH, Mayne, Judge Kinsey, Ricketts, Families Count, Eddins, Patterson, and Rimmer moved to dismiss the claims against them.[3]  Plaintiffs moved to conduct discovery on the defenses of qualified and absolute immunity asserted by defendants.  Concluding that plaintiffs sought to engage in discovery that was unnecessarily broad for purposes of responding to the pending motions to dismiss, the court denied plaintiffs' motion. The court noted, however, that if the issue of qualified immunity was raised again on a motion for summary judgment, plaintiffs might be entitled to limited discovery on the issue, if the discovery was shown to be appropriate in light of the facts and supported by case law.   In March 2008 Cunningham and Weathersby also moved to dismiss the claims against them.  By order dated July 17, 2008, the court granted all five of the pending motions to dismiss, with the exception of Ricketts' motion, which it

---

[2]  Count I of the amended complaint is a claim for money damages pursuant to § 1983 and *Bivens* against the fourteen defendant law enforcement officers, as well as Ricketts and Mayne.  Count II is a claim for injunctive relief pursuant to § 1983 against Eddins, Patterson, Rimmer, and Judge Kinsey.  Count III is a state law claim for money damages against Ricketts, GCKH, and Families Count for "gross reckless disregard" or, alternatively, for negligence.  The amount of actual and punitive damages sought by plaintiffs is twenty-two million dollars plus attorney's fees.

[3]  GCKH filed its motion to dismiss alone but Mayne and Judge Kinsey filed together, as did Ricketts and Families Count.  Eddins, Patterson, and Rimmer also filed together.

denied in part.[4]  In its order the court also directed plaintiffs to file proof that Lewis had been served with process; on September 11, 2008, the court dismissed Lewis from the action for plaintiffs' failure to effect service and failure to comply with an order of the court. Thus, following entry of the court's July 17, 2008, and September 11, 2008, orders, only Count I of the amended complaint (plaintiffs' constitutional claim for damages pursuant to § 1983) remained and only against Barber, Gulsby, Reed, Melaven, McCurdy, Shuler, Griffin, Easterday, Weller, Wilkinson, Gowitzke, and Ricketts.

Ricketts filed her instant motion for judgment on the pleadings on July 31, 2008. Wilkinson filed his motion for summary judgment on July 30, 2008, and Barber, *et al.*, filed their motion for summary judgment on August 11, 2008.  The court entered orders on the motions for summary judgment setting advisement dates of August 29, 2008, and September 3, 2008, respectively.[5]  On plaintiffs' motion, filed August 25, 2008, the court gave plaintiffs until September 8, 2008, in which to file their evidentiary materials and response to the Barber, *et. al.*, motion.  As to the motions filed by Wilkinson and Ricketts, because plaintiffs did not request an enlargement of time in which to respond, no extension was given; further, because the time for filing responses to these motions had passed, the court also stated that no enlargement would be granted. The court noted that the advisement date for filing evidentiary materials in response to Wilkinson's motion had not passed and thus plaintiffs had until that date in which to file evidence in opposition. Additionally, addressing plaintiffs' contention that they required discovery on the issue of

---

[4]  Ricketts argued in her Fed.R.Civ.P. 12(b)(6) motion that she was not a state actor and therefore was not subject to liability pursuant to § 1983.  The court concluded that in their amended complaint plaintiffs had stated "enough facts" to survive this argument, the only one Ricketts raised in connection with plaintiffs' § 1983 claim against her.

[5]  Both orders also noted, *inter alia,*  that the response to a motion for summary judgment must be filed within the time prescribed by the Local Rules. Local Rule 56.1(B) provides that a motion for summary judgment will be taken under advisement by the court twenty-one days after the motion is filed or seven days after the responsive memorandum is due to be filed, whichever is later, unless the motion is set for hearing or the court sets a different advisement date.  The court's advisement orders also noted that the advisement procedures for filing evidentiary materials do not alter the requirements for filing responsive memoranda under Local Rule 7.1.  Local Rule 7.1(C)(1) gives each party opposing a motion fourteen days in which to serve and file responsive a memorandum.

qualified immunity, the court noted that plaintiffs had not filed a motion pursuant to Fed.R.Civ.P. 56(f), properly supported, explaining why such discovery was warranted. Nonetheless, the court further noted that even if plaintiffs had filed a Rule 56(f) motion, based on the court's knowledge of the specific facts of this case the motion would be denied: the discovery plaintiffs sought would be burdensome to defendants and unlikely to provide information relevant to the court's qualified immunity analysis.  Notwithstanding the court's statement that a Rule 56(f) motion would not be granted, plaintiffs immediately filed such a motion asking permission to conduct discovery into the question of whether Barber knew that the search warrant for the Fleming home was "invalid even though it appeared to be valid on its face."   (Doc. 118 at 1).  The court summarily denied this motion.[6]

Plaintiffs filed their response to the Barber, *et al.*, motion on September 9, 2008.[7] They did not file a statement of disputed facts in connection with their response nor did they file any evidence, either in support of this response or with respect to the Wilkinson motion.

**Background**

In their present motion Barber, *et al.*, quote one paragraph from the court's July 17, 2008, order on the motions to dismiss, which they submit correctly summarizes the facts of this case.  For the purpose of capsulizing the factual background of this matter, the court

---

[6] Plaintiffs sought to have their Rule 56(f) motion filed under seal, stating that they wished to explain to the court their need for discovery but wanted to keep the deponent from learning prior to deposition the questions counsel intended to ask.  More specifically, plaintiffs sought to keep Barber, and perhaps others, from knowing in advance that counsel would inquire into the circumstances surrounding the presentation of the probable cause affidavit  to Judge Kinsey.  According to plaintiffs, such "knowledge . . . can be expected to adversely affect the truthfulness of the answers given."  (Doc. 118 at 2).
  Although in denying the Rule 56(f) motion the court did not discuss its reasons, it now notes that in their motion plaintiffs presented nothing to alter the court's prior conclusions that the discovery sought would unfairly burden defendants and that no information relevant or helpful to the court's qualified immunity analysis likely would be obtained.  Additionally, plaintiffs' premise—that the court should anticipate Barber or others would perjure themselves during deposition if given advance warning of the questions to be asked lacked any basis in fact.

[7] The court granted plaintiffs' request to file the response one day late.

recites the paragraph here:

> In the spring of 2005, Escambia County law enforcement officers –
> apparently Barber, Weller, and perhaps Gowitzke[8]—commenced an
> investigation into allegations that Ronald Fleming had sexually abused an
> eight or nine-year-old girl who, along with her mother and a younger sibling,
> had previously lived with the Flemings. GCKH case coordinator and Families
> Count employee Ricketts conducted an interview with the child at GCKH in
> April 2005. During the interview the girl reported that she had been subjected
> to several acts of sexual battery by Ronald Fleming; the child also stated that
> Ronald Fleming had shown her pictures on the internet of nude teenagers.
> According to plaintiffs, Barber observed the child's interview, and FDCF
> investigator Mayne either participated in or supervised it.

Doc. 110 at 2 (citing doc. 104 at 2).

Wilkinson quotes the following paragraph from the court's order.  He likewise states

that it correctly summarizes the facts of this case:

> Based on the information provided by the child the investigators decided to
> seek a search warrant for the Fleming home.  Barber prepared and filed a
> search warrant and an affidavit in support of the warrant, but she failed to
> sign the affidavit.  The documents were submitted to Judge Kinsey, who
> attested by her signature dated June 28, 2005, that the affidavit had been
> "sworn to and subscribed" before her.  Relying on the assertions made in the
> affidavit, Judge Kinsey issued a warrant that authorized the search and
> seizure of plaintiffs' residence and their personal effects.  The warrant was
> executed on June 29, 2005, apparently by Barber, Gowitzke, Reed, G[u]lsby,
> Lewis, Melaven, Wilkinson, McCurdy, Shuler, Griffin, Easterday,
> Weathersby, and Cunningham.[ ]  Also, Ronald Fleming was arrested and
> taken into custody at that time.  Later that day Gowitzke stated to WEAR
> Channel 3 News that Ronald Fleming was a twice-convicted child molester
> and convicted murderer and that he had also been arrested for being the
> leader of a child pornography ring.  These statements were published on the
> television station's news broadcast.

Doc. 105 at 1-2 (citing doc. 104 at 3).

For summary judgment purposes, the following information is taken from the

---

8  The Barber, *et al.*, defendants submit that Gowitzke in fact was not involved with investigation the
allegations against Ronald Fleming but rather only assisted Barber in preparing the search warrant affidavit
and the search warrant for the Fleming residence.

statements of undisputed facts submitted with the defendants' motions for summary judgment.  Because plaintiffs failed to respond with a statement of disputed facts, pursuant to local rule plaintiffs are deemed to have admitted the material facts set forth by the defendants, which facts the court outlines below.[9]  N.D.Fla.Loc.R. 56.1(A). ("All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement to be filed and served by the opposing party.").

The defendants each filed affidavits in support of their statement of undisputed facts, which are consistent with and supplement the introductory information quoted above from the court's prior order.[10]  Weller states in his affidavit that he responded to a complaint of sexual battery against a child in April 2005.  He spoke with the child's mother and stepfather at that time, then contacted Barber for further instructions.  She advised him not to speak with the alleged victim, as a member of the Child Protection Team would instead conduct the interview.  Weller prepared an offense report in connection with the incident but had no other involvement with the investigation into the allegations of sexual battery nor did he consult with prosecutors concerning Ronald Fleming's prosecution.  Weller did not take part in the search of the Fleming residence on June 29, 2005.  He did, however, execute the arrest warrant on Ronald Fleming that date, taking Ronald Fleming into custody and transporting him to the Escambia County Jail.

According to Barber's affidavit, in April 2005, in the course of her duties as a deputy sheriff with the Escambia County Sheriff's Office Sex Crimes Unit, she was informed of a

---

[9]  At summary judgment this court must view the facts in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  The court therefore does so here, drawing those facts from the pleadings, depositions, and other evidentiary materials on file. Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts. *See Montount v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

[10]  The court advises the parties that, based on privacy concerns pertaining to the minor, it directed the clerk to seal two of the affidavits due to attachments to those documents that were not filed in conformance with Fed.R.Civ.P. 5.2. *See* doc. 110-2 and 110-6 (affidavits of Barber and Weller).  If the parties are aware of any other documents in the record that should likewise be sealed or redacted, they should immediately so notify the court.

report of a possible sexual battery on a nine-year-old female.[11]  Melaven, who is Barber's
supervisor, directed Barber to conduct an investigation into the report.  Barber spoke with
the child's mother, stepfather, and biological father as part of her investigation but did not
interview the child herself.  Rather, Barber made an appointment for the child to be
interviewed by a member of the Child Protection Team.  Barber later observed the child's
interview, which was conducted by Ricketts.  As a result of her investigation, Barber
prepared a probable cause affidavit for a search warrant for the Fleming residence and the
warrant itself.  She also prepared documents for an arrest warrant for Ronald Fleming.
Barber personally presented the affidavit for the Fleming residence search warrant to
Judge Kinsey, who signed and issued it, but Barber was unaware at the time that she
herself had failed to fully execute the affidavit by signing it.  Barber participated in the
search of the Fleming residence, following which she prepared and signed a search
warrant return for items seized from the home.  Barber did not learn of her inadvertent
failure to sign the affidavit in support of the search warrant until she was deposed in
Ronald Fleming's criminal case.

The affidavits of Melaven, Gulsby, Reed, McCurdy, Shuler, Griffin, Easterday, and
Wilkinson are substantially similar—though not identical—to Barber's.  Many of these
affiants reference an informal agreement among certain federal, state, and local law
enforcement agencies to investigate allegations of sex crimes and child abuse in the
Escambia County, Santa Rosa County, and Okaloosa County areas.  Under this
agreement among the agencies which employ (or previously employed) them, each of the
defendants assisted in executing the search warrant on the Fleming's residence on June
29, 2005, either in a back-up or supervisory capacity.[12]  Most, if not all, of these officers
entered the residence during the search but none had any other involvement in the

---

[11] Attached to Barber's now-sealed affidavit is the probable cause affidavit for Ronald Fleming's arrest
warrant and the arrest warrant itself signed by Judge Kinsey.  Barber did not submit the probable cause
affidavit for the search warrant but, properly redacted, it is attached to the amended complaint as an exhibit.
(*See* doc. 4-6).

[12] The officers also executed additional search warrants on June 29, 2005, in connection with other
cases.

operation.  More specifically, the officers did not take possession of any seized evidence, arrest or transport Ronald Fleming, prepare any statements, speak publically concerning the events, or consult with the prosecutor concerning Ronald Fleming's criminal prosecution. Other than Melaven, who assigned the Fleming case to Barber and approved the arrest warrant affidavit prepared by Barber, none of these officers had any role in the investigation of the allegations against Ronald Fleming.  Each of these defendants avers that, relying on information provided by fellow officers, he acted in good faith that a lawful search warrant had been issued by a duly empowered judicial officer before assisting in executing the search warrant and/or supervising the search of the residence.  Additionally, each officer states he was unaware at the time of the search that Barber had failed to sign the affidavit offered in support of the warrant issued by Judge Kinsey.

According to Gowitzke's affidavit, in June 2005 he worked in the Escambia County Sheriff's Office Computer Crimes Unit and also served as the liaison for area law enforcement officers who were members of the North Florida Internet Crimes Against Children Task Force.  Gowitzke assisted Barber during her investigation into allegations that Ronald Fleming used a computer to commit a sex crime against a child, including approving Barber's probable cause affidavit for the search warrant for the Fleming residence.  Gowitzke did not participate in the execution of the search warrant.  Relying on information available in the Escambia County Sheriff's Office records reporting system, however, he distributed a press release regarding several warrants that had been executed on June 29, 2005, including those involving Ronald Fleming. Gowitzke included in the press release references to Ronald Fleming's prior convictions and arrests, unaware at the time that the information he had been provided about Ronald Fleming was incorrect.  The reporting system in fact contained information about two persons named Ronald Fleming [but who had different middle names] and wrongly attributed all of the criminal activity for both men to plaintiff alone.  Upon learning of the error from plaintiff's counsel, Gowitzke immediately contacted the Escambia County Sheriff's Office Public Information Officer so that a correction could be made.

**Discussion**

<u>Defendants Barber, Gulsby, Reed, Melaven, McCurdy, Shuler,
Griffin, Easterday, Weller, Wilkinson, and Gowitzke</u>

To establish a civil rights claims pursuant to § 1983 a plaintiff must show that he was deprived of a right secured by the Constitution or laws of the United States and that the person who committed the alleged deprivation acted under color of state law. *See Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1277 (11th Cir. 2003); *Patrick v. Floyd Medical Center*, 201 F.3d 1313, 1315 (11th Cir. 2000). In this case, it is undisputed that the law enforcement defendants acted under color of state law. The court therefore turns to the question of whether plaintiffs have shown that any of these defendants deprived them of a right protected by the Constitution.

The Flemings allege that the law enforcement defendants knew or should have known that the warrant used to search and seize plaintiffs' property was invalid because the affidavit in support lacked Barber's signature, contained insufficient information to establish probable cause, contained both information from an unreliable source (an eight or nine-year-old child), and was obtained in an unreliable manner. Plaintiffs further allege that Gowitzke made slanderous statements to the news media that Ronald Fleming was a convicted child molester and murderer; according to plaintiffs, Gowitzke's statements resulted in their neighbors engaging in conduct that forced plaintiffs to relocate, thereby depriving plaintiffs—without due process—of the right to continue to live in their home.

In their motions for summary judgment, defendants argue that the undisputed facts reflect that they took no actions in connection with the search and seizure of the Fleming residence or Ronald Fleming's arrest that violated plaintiffs' well-established constitutional rights. Accordingly, defendants contend, they are entitled to qualified immunity. Responding to the Barber, *et al.*, motion, plaintiffs submit that this court should find that the doctrine of qualified immunity is unconstitutional and refuse to apply it in this case. Should the court decline to so rule, plaintiffs alternatively argue that the defendants are not entitled to qualified immunity on the facts of this case because a reasonable law enforcement officer could not have believed at the time of the search that judicial officer had made a

neutral determination as to whether probable cause existed.[13]

As plaintiffs predict, the court rejects their argument that the doctrine of qualified immunity is unconstitutional.  Indeed, given the long line of Supreme Court precedent applying and defining the doctrine, the most recent decision having been issued in January 2009, *see Pearson v. Callahan*, 555 U.S.____, 129 S.Ct. 808, ___ L.Ed.2d ____ , No. 07-751 (January 21, 2009), the court concludes this patently frivolous argument warrants no discussion.  The court therefore proceeds to assessing the applicability of the qualified immunity to the defendants in this case.

To be eligible for qualified immunity, a government official must first establish that he was performing a discretionary function at the time the alleged violation of federal law occurred.  *See Crosby v. Monroe County*, 394 F.3d 1328, 1331 (11th Cir. 2004).  In this case, the allegations of plaintiffs' amended complaint reflect, and plaintiffs apparently also concede in their response, that all of the conduct in which the law enforcement defendants allegedly engaged involved discretionary functions.

Once the defendant has established that he was engaged in a discretionary function, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity. *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).  The Supreme Court has set forth a two-part test for the qualified immunity analysis. "The threshold inquiry a court must undertake . . . is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.  "If a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right

---

[13] Just as they argued in response to the motions to dismiss, plaintiff again contend that Judge Kinsey should not be deemed a neutral decision maker, in light of statements she made during her campaign for election to the bench regarding her support of law enforcement.  The court again notes that this suggestion merits no discussion.

was clearly established.'" *Vinyard*, 311 F.3d at 1346 (quoting *Saucier*, 533 U.S. at 201). In the recently decided *Pearson v. Callahan*, 555 U.S.____, 129 S.Ct. 808, ___ L.Ed.2d ____ , No. 07-751 (January 21, 2009), the Supreme Court instructed that while it may be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, this "inflexible" sequencing of the analytical steps is not mandatory. Rather, the Supreme Court held, district courts retain discretion to decide which of these two prongs should be addressed first in light of the circumstances of the particular cases before them. *Id.* (overruling *Saucier* on the summary judgment sequencing requirement); *Case v. Eslinger*, ___F.3d ____, 2009 WL 196842 (11th Cir. 2009) (discussing *Pearson)*. Given the summary judgment posture of the instant case, the court concludes that in the interest of judicial economy it should consider the first prong, *i.e.,* whether plaintiffs' allegations, if true, establish a constitutional violation. *See Case*, 2009 WL 196842, *5 (deciding to examine first the question of whether a constitutional violation occurred because, in light of the summary judgment record, the "precise factual basis for [plaintiff's] claim . . . [was not] hard to identify"; proceeding with "clearly established" prong first therefore would not conserve judicial resources) (citing *Pearson*, 555 U.S. ____, No. 07-751, *13).  More particularly in this case, the court must determine whether plaintiffs' allegations are sufficient to show that any of the law enforcement defendants violated plaintiffs' constitutional rights under the Fourth Amendment not to be subjected to an unreasonable search and seizure of their property on June 29, 2005, and, as to Ronald Fleming, the seizure of his person that date.

The court first briefly considers, to the extent the allegations of the amended complaint may be said to clearly assert it, Ronald Fleming's claim of unlawful arrest.  As noted above, Barber prepared the arrest warrant affidavit, Melaven approved it, and Weller executed the arrest warrant issued by Judge Kinsey. There is no suggestion that either the arrest warrant affidavit or the warrant itself contained any technical deficiencies. Moreover, taking the facts in the light most favorable to plaintiffs, the court is satisfied that the affidavit—which discusses in detail when, how, and against whom Ronald Fleming

allegedly committed sexual offenses and outlines the evidence supporting those detailed facts—provided ample probable cause for an arrest.[14]  If probable cause exists,  an arrest does not violate the Fourth Amendment. *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003). In this case, because probable cause existed to arrest Ronald Fleming on June 29, 2005, plaintiffs have failed to allege the violation of a constitutional right in connection with that arrest.

The  court  next  considers  whether  the  Flemings  have  alleged a constitutional violation  with  respect  to  the  search  of  their  residence  and  seizure  of  their  personal property.  As an initial matter, the warrant was facially valid.  The warrant references an affidavit establishing probable cause for the search (including  detailed  information regarding the alleged sexual offenses), describes the place to be searched and the things to be seized with particularity, and was signed by an authorized judicial officer.  *See Groh v. Ramirez*, 540 U.S. 551, 557, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004).  As plaintiffs point  out,  however,  in  granting  Ronald  Fleming's  motion  to  suppress  evidence  seized during the June 29, 2005, search the state court held that the failure to execute the affidavit was fatal to the validity of the search  warrant.

The undisputed evidence in this case reflects that Gulsby, Reed, McCurdy, Shuler, Griffin, Easterday, and Wilkinson performed only peripheral roles in executing the warrant. Under the doctrine of qualified immunity, "[o]fficials are liable for committing constitutional torts . . .  only  if  they  knew,  or  were  unreasonable  in  not  knowing,  that  their  behavior violated the Constitution." *Harris v. District of Columbia*, 932 F.2d 10, 13 (D.C.Cir. 1991). The undisputed evidence shows that in participating in the execution of the search warrant on the Flemings' home, Gulsby, Reed, McCurdy, Shuler, Griffin, Easterday, and Wilkinson neither knew, nor were unreasonable in not knowing, that the warrant was invalid because Barber had failed to sign the affidavit in support.  These defendants were entitled to rely on the facial validity of the search warrant signed by Judge Kinsey and the fact that they

---

[14]  The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.

did so here was reasonable; they were not required to verify the procedural or substantive accuracy of the affidavit in support of the warrant.  Barber, Melvaven, Gowitzke, and Weller played more direct roles in investigating the allegations against Ronald Fleming, preparing the search warrant, and/or executing the warrant.   Where officials act in a manner they reasonably believe to be lawful, no personal liability attaches.  *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Here, each of these defendants reasonably, and correctly, concluded that probable cause for searching the Fleming residence existed.  Moreover, Barber's undisputed testimony reflects that her failure to sign the affidavit in support was simple inadvertent, *i.e.,* mere negligence. Merely negligent conduct does not "wor[k] a deprivation in the constitutional sense."[15] *Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986); *Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S.Ct. 1708, 1718, 140 L.Ed.2d 1043 (1998) (commenting that "the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."). For all of these reasons, the Flemings have not shown that any of the law enforcement defendants in this case violated the Fourth Amendment in connection with the search warrant executed on their residence on June 29, 2005.

Plaintiffs also assert that in the press release Gowitzke made false, defamatory statements about Ronald Fleming by misstating his prior criminal history, which ultimately resulted in depriving plaintiffs—without due process—of the right to continue to live in their home because of their neighbors' adverse reactions. Gowitzke acknowledges that the information in his press release about Ronald Fleming was incorrect.  He attributes the mistake to faulty information provided to him through the Escambia County Sheriff's Office computer system, but states that he corrected the information as soon as he learned of the

---

[15]  Whether a greater degree of culpability, such as recklessness or gross negligence, might support a § 1983 claim appears to remain an open question. *Porter v. White,* 483 F.3d 1294, 1308 n.11 (11th Cir. 2007).  In *Porter*, the Eleventh Circuit declined to address whether, in connection with a due process claim, recklessness or gross negligence might be enough to trigger the protections of the Due Process Clause because the issue was not before the court.  In the instant case the evidence likewise is only sufficient to support, at most, an inference of mere negligence by the defendants and thus this court need not consider the question.

error.

In *Porter*, the Eleventh Circuit found it that it did not need to decide whether the plaintiff's § 1983 claim sounded in procedural or substantive due process, in part because in either instance the defendant's merely negligent conduct was insufficient to sustain a due process claim. *Porter*, 483 F.3d at 1308 (citing *Davidson v. Cannon*, 474 U.S. 344, 348, 106 S.Ct. 668, 671, 88 L.Ed.2d 677 (1986) (holding that "the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care.")). *See Lewis*, 523 U.S. at 849, 118 S.Ct. at 1718 (noting that *Cannon* "clarif[ies] that *Daniels* applies to substantive, as well as procedural, due process."). The undisputed evidence in this case reflects that, at most if at all, Gowitzke acted negligently when he released incorrect information to the media about Ronald Fleming. Thus, as in *Porter*, this court need not consider whether plaintiffs' due process claim sounds in procedural or substantive due process because, in either case, no claim lies for negligent conduct. Moreover, plaintiffs cannot demonstrate "an affirmative causal connection between [Gowitzke's] acts or omissions and the alleged constitutional deprivation" of the Fleming's loss of enjoyment of their home due to their neighbors' conduct. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) ("Congress did not intend § 1983 liability to attach where [ ] causation [i]s absent"); *Troupe v. Sarasota County, Fla.*, 419 F.3d 1160, 1165 (11th Cir. 2005) (noting that a § 1983 claim requires proof "of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation."); *Jackson v. Sauls*, 206 F.3d 1156, 1168 (11th Cir. 2000) (noting that a § 1983 defendant is responsible only for the natural and foreseeable consequences of his actions). The Flemings can therefore establish neither a procedural nor a substantive due process claim against Gowitzke.

In summary, taking the allegations of the amended complaint as true, the court concludes that the Flemings have failed establish that—acting in any capacity—Barber, Melaven, Gowitzke, Weller, Gulsby, Reed, McCurdy, Shuler, Griffin, Easterday, or Wilkinson violated their constitutional rights in any manner. Each of these defendants

therefore is entitled to qualified immunity.[16]  Accordingly, the court grants the Barber, *et al.*, and Wilkinson motions for summary judgment.

Ricketts

Plaintiffs allege that Ricketts obtained information from the child during the interview that was unreliable and false and that she knew or should have known that the information would be used to establish probable cause for the unreasonable search and seizure of plaintiffs' property.  In her motion for judgment on the pleadings, Ricketts argues that as a state actor she is entitled to qualified immunity and also that plaintiffs have failed to state a claim for relief against her.

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c).[17]  Entry of judgment on the pleadings "is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)).  The standard applied to a Rule 12(c) motion is essentially identical to the standard applied to a Rule 12(b)(6) motion. *See ThurderWave, Inc. v. Carnival Corp.*, 954 F.Supp. 1562, 1564 (S.D.Fla. 1997) (citing cases).  The court must assume that all facts in the complaint are true and view those facts in a light most favorable to the non-moving party. *Hardy v. Regions Mortgage, Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006) (citation omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,

---

[16]  The court therefore need not consider Gowitzke's additional argument that he is protected by absolute immunity for his role in issuing the press release about Ronald Fleming that contained incorrect information.

[17]  Pleadings are considered "closed" when the defendant has answered the complaint.  *See Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n. 8 (11th Cir. 2002).  Ricketts filed an answer to the amended complaint and thus the pleadings are closed with respect to her.

127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (quotation marks, citations, and brackets omitted). Further, the plaintiff's factual allegations, when assumed to be true, "must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

This court concluded in its July 17, 2008, order that plaintiffs had alleged enough facts to survive a Rule 12(b)(6) motion on the issue of whether Ricketts is a state actor and thus is potentially liable in connection with plaintiffs' § 1983 claim against her.   For purposes of the instant motion for judgment on the pleadings, this conclusion is unaltered. The present record on Ricketts' Rule 12(c) motion simply is not adequate, however, to enable the court to determine whether Ricketts in fact is a state actor and thus whether she may be entitled to qualified immunity.[18]   Regardless, the court concludes that Ricketts' motion should be granted.

The allegation that Ricketts violated the Constitution by conducting an interview in a manner that led to the issuance of a search warrant fails to state a claim for relief. "There is no constitutional due process right to have child witnesses, in a child sexual abuse investigation, interviewed in a particular manner or pursuant to a certain protocol." *Devereaux v. Perez*, 218 F.3d 1045, 1053 (9th Cir. 2000); *see also Myers v. Morris*, 810 F.2d 1437 (8th Cir. 1987). Also, any alleged connection between Ricketts and the complained-of search and seizure is too attenuated to state a § 1983 due process violation under the Fourteenth Amendment. *See Troupe*, 419 F.3d at 1165 (11th Cir. 2005); *Jackson*, 206 F.3d at 1168.   Nor do plaintiffs' allegations against Ricketts state a Fourth Amendment claim.   Nothing in the complaint suggests that Ricketts took any part in actually obtaining the search warrant or in searching or seizing plaintiffs' property.  In any

---

[18]  As the court observed in its July 17, 2008, order, "if it is determined that Ricketts is [not] a state actor for purposes of plaintiffs' § 1983 claim . . . as a privately employed social worker or child abuse investigator the doctrine [of qualified immunity] likely will not apply to her." Doc. 104 at 15, n. 12 (citing <u>Hinson v. Edmond</u>, 192 F.3d 1342 (11th Cir. 1999) (declining to extend qualified immunity to privately employed prison physician)).  If Ricketts is a state actor, however, it appears she would be entitled to the protection of qualified immunity for the same reasons the court concluded defendant Mayne was so entitled.  *See id.* at 12 (granting defendant Mayne qualified immunity because in June 2005 it was not clearly established in this circuit that in a sexual abuse investigation soliciting a nine-year-old child's uncorroborated but otherwise facially trustworthy statement that was later cited in an affidavit in support of a search warrant violated the Constitution).

event, the Eleventh Circuit has held that in addition to independent evidence an investigator is entitled "to rely to a meaningful degree on [a three and one-half year old child's] statements in determining the existence of probable cause . . . ." *Rankin v. Evans*, 133 F.3d 1425, 1440 (11th Cir. 1998); s*ee also Lowe v. Aldridge*, 958 F.2d 1565, 1571 (11th Cir. 1992) (stating "[t]here is no basis for holding that police officers cannot depend on the uncorroborated evidence of a child victim of sexual abuse for the request for a warrant."); *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990) (determining that officers reasonably relied on the statements of a four-year-old to support, in part, their assertion that probable cause for an arrest existed). Notwithstanding plaintiffs' vague and conclusory accusation that the information Ricketts obtained from the child was false and unreliable, the allegations of the complaint reflect no more than that in providing information to law enforcement Ricketts relied "to a meaningful degree" on the statements of a witness of eight or nine years.  These allegations are insufficient to state a claim. Because plaintiffs' factual allegations, taken as true, are insufficient "to raise a right to relief above the speculative level," Ricketts' motion is due to be granted. *Twombly*, 127 S.Ct. at 1965.

**Conclusion**

For all of the foregoing reasons, the motions for summary filed by Barber, *et al.*, and Wilkinson are granted.  The motion for judgment on the pleadings filed by Ricketts is also granted.  Judgment shall be entered in the defendants' favor accordingly.

Accordingly, it is ORDERED:

1.      The motions for summary judgment filed by Barber, *et al.*, (doc. 110) and Wilkinson (doc. 105) are GRANTED.

2.      The motion for judgment on the pleadings filed by Ricketts (doc. 107) is GRANTED.

3.      The clerk shall enter final judgment in favor of defendants Barber, Gulsby,[19] Reed, Melaven, McCurdy, Shuler, Griffin, Easterday, Weller, Wilkinson, Gowitzke, and

---

[19]  The clerk shall change the docket to reflect the correct spelling of the name of defendant Jerry Gulsby.

Ricketts.  As set forth in the court's July 18, 2008, order, final judgment shall also be entered at this time in favor of the other defendants in this case, Judge Kinsey, Mayne, Gulf Coast Kids House, Families Count, Eddins, Patterson, Rimmer, Cunningham, and Weathersby.

**DONE and ORDERED** this 3rd day of March, 2009.


*s/ M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**